UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LEROY HENRY LEWIS,

        Movant,

                                           File No.  1:05-CV-617

v.

                                         HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

        Respondent.

_____/

## O P I N I O N

This matter is before the Court on Movant Leroy Henry Lewis' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Lewis was charged in a four-count indictment with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(j), and a single count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1).  Lewis was tried before a jury and found guilty of one count of being a felon in possession of a firearm, possession of a stolen firearm, and possession with intent to distribute cocaine base.  Lewis was acquitted of one count of felon in possession of a firearm.  Lewis was sentenced to imprisonment of 240 months and 5 years of supervised release. Lewis appealed his conviction.  On September 15, 2004, the United States Court of Appeals for the Sixth Circuit affirmed the conviction.  Thereafter, Lewis applied for a writ of certiorari from the United States Supreme Court, which was denied on February 28, 2005.

Movant timely filed this motion under 28 U.S.C. § 2255 on September 12, 2005. Lewis originally filed his motion pro se, claiming that trial counsel was ineffective. Before the Government filed its response, Lewis, through retained counsel, filed a supplemental brief further addressing the ineffective assistance of counsel claim. Lewis contends that trial counsel was ineffective when he failed to file a motion to suppress evidence obtained pursuant to three search warrants, failed to file a Rule 29(a) motion on the possession of a stolen firearm charge, and failed to object to various allegedly improper questions and trial tactics of the Government. Because Lewis is unable to overcome the strong presumption that trial counsel's conduct was within the wide range of reasonable professional assistance, his motion is denied. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984).

## I.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). "To prevail under § 2255, [movant] must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it

amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

In an action to vacate or correct the sentence, the court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. No evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Where, as here, the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Id.* (citing *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)).

## II.

The Sixth Amendment guarantees the right to effective assistance of counsel to each criminal defendant. *See e.g.*, *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000). In order to prevail on an ineffective assistance of counsel claim, a "defendant must show that counsel's performance was deficient [and] . . . that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The Sixth Circuit has further explained the test for ineffective assistance of counsel as follows:

> Under *Strickland v. Washington*, 466 U.S. 668 (1984), a violation of the right to effective assistance of counsel has two components:

3

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

> *Id.* at 687. Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To demonstrate that counsel's performance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, he "must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005) (quoting *Wickline v. Mitchell*, 319 F.3d 813, 819 (6th Cir. 2003)). Lewis argues that his trial counsel rendered ineffective assistance in the following ways: 1) defense counsel failed to file a motion to suppress evidence obtained pursuant to one of three search warrants; 2) defense counsel failed to object to "considerable prosecutorial misconduct;" and 3) defense counsel failed to file a Rule 29 motion on the possession of a stolen firearm charge. *See* Mov.'s Supp. Br. at 3 (Docket #7). None of Lewis' claims merit relief. Each will be addressed below.

A.   *The Failure to File a Motion to Suppress*

Lewis' strongest argument in favor of relief is that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence obtained pursuant to a search warrant executed on March 13, 2002. At the final pretrial conference, the Court

4

specifically asked defense counsel if any of the three search warrants would be the subject

of a suppression motion.  Transcript of Final Pretrial Conference at 6, 1:02-CR-71 (Docket

#54).   Defense counsel  explained  that  he  had  discussed  the  search  warrants  with  the

Government's attorney and, under directions from his client, investigated the issue.  Counsel,

however, ultimately concluded that "[i]t's my position based on my investigation that at this

time [suppression] is not an issue."  *Id*. at 6.  Lewis' present claim tests whether the decision

to forego a motion to suppress "fell below an objective standard of reasonableness" and

whether, as a result, the deficient performance prejudiced him.  *Strickland*, 466 U.S. at 689,

694.

Lewis argues that the search warrant issued for his residence on March 13, 2002 was

not supported by probable cause.  Probable cause for the warrant was substantiated by Lake

County Sheriff's Department Deputy Harold Nichols' affidavit attached to the search warrant.

After setting forth Deputy Nichols' law enforcement experience, the affidavit stated:

> Affiant  was  present  during  an  interview  with  informant,  #02-1,  when
> informant told affiant that on 03/12/02 Wednesday informant observed three
> black handguns along with crack cocaine on the bed and two rifles in the
> corner of Leroy Lewis' bedroom at the above location.

> Affiant then learned that informant was present when Leroy Lewis supplied
> cocaine to an informant's family member just that same night (03/12/02) the
> drugs officers found was from that incident.

March 13, 2002 Search Warrant, Attach. 1, 1:02-CR-71 (Docket #51).  A magistrate judge

granted the search warrant and a search of Lewis' residence was conducted that same day.

During the search, police discovered crack cocaine, drug paraphernalia, scales, baggies,

5

firearms, and ammunition.  Transcript of Jury Trial, Volume 1, 42-51, 1:02-CR-71 (Docket #36).  The evidence recovered from the search was introduced into evidence during Lewis' trial.  *Id*.

Lewis contends that the affidavit did not provide sufficient information regarding the confidential informant's reliability and veracity, and therefore, information from the informant should have been disregarded by the magistrate judge in making the probable cause determination.  *See United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005) (noting that an assessment of the "totality of the circumstances" includes evaluating a confidential informant's veracity, reliability, and basis of knowledge) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)); *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000).  While the affidavit supporting the search warrant may or may not have been sufficient to establish probable cause, it is not necessary for the Court to resolve this issue because Lewis cannot establish any prejudice resulting from counsel's failure to seek suppression of the evidence seized pursuant to the March 13, 2002 search warrant.  *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").[1]

---

[1]Lewis contends that the Court should presume prejudice for purposes of the ineffective assistance of counsel analysis.  This argument is completely without merit. Although the Supreme Court, in *United States v. Cronic*, 466 U.S. 648 (1984), stated that a

"In order to show prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Johnson v. Luoma*, 425 F.3d 318, 327 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 694).  In this case, Lewis cannot show that the outcome of his case would have been different if the evidence from the March 13, 2002 search was excluded.  First, defense counsel was successful in obtaining an acquittal for Lewis on count one of the superseding indictment charging Lewis with being a felon in possession of a firearm.  This charge encompassed the firearms and ammunition seized during the March 13, 2002 search.  *See* Superseding Indictment, 1:02-CR-71 (Docket #19).  Therefore, although this evidence

---

showing of prejudice was not required if defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," such a case is not presented here.  Lewis attempts to cast his counsel's performance as a complete failure to subject the Government's case to meaningful adversarial testing.  This claim, however, is undermined by the fact that defense counsel actively participated in Lewis' trial by cross-examining witnesses, presenting an opening and closing statement, and presenting a defense theory that was ultimately successful in obtaining an acquittal on one of the charges in the indictment.  *See Millender v. Adams*, 376 F.3d 520, 524 (6th Cir. 2004) (holding that district court properly applied *Strickland*, rather than *Cronic* where defense counsel cross-examined witnesses, made proper objections, and presented a closing argument). Moreover, a review of Lewis' ineffective assistance of counsel claim reveals that he is actually challenging specific aspects of counsel's representation, rather than a complete failure to test the Government's case.  In such a situation, *Strickland*, rather than *Cronic*, clearly applies.  *See Bell v. Cone*, 535 U.S. 685, 696-97 (2002) (applying *Strickland* to ineffective assistance of counsel claim where respondent challenged specific attorney errors made during sentencing phase of trial).

was introduced during trial it did not result in prejudice to Lewis because he received an acquittal on this charge.

Second, with regard to the possession with intent to distribute cocaine base charge, Lewis cannot show that the outcome of the trial would have been different if the evidence of drug distribution seized on March 13, 2002 had been excluded.  In addition to the evidence from the March 13, 2002 search, the jury also viewed evidence from and heard testimony regarding two subsequent searches of Lewis' residence on March 30 and 31, 2002.[2]  These subsequent searches uncovered the same type of evidence of drug manufacturing found during the March 13, 2002 search.  The jury heard testimony that, prior to obtaining the second search warrant, the police conducted a controlled purchase of narcotics.  Excerpt of Jury Trial Transcript, Harold Nichols at 8-12, 1:02-CR-71 (Docket #35).  After obtaining the search warrant, the police conducted a search of Lewis' home.  Transcript of Jury Trial, Vol. I, at 56.  During the search, the police discovered a yellow plate and razor blades with white residue.  *Id*.  The jury heard testimony from law enforcement officers that razor blades are used to cut and package crack cocaine for distribution.  *Id.*  The police also found a crack pipe, scales, plastic baggies commonly used for packaging drugs, ammunition, and a marijuana cigarette.  *Id*. at 57-64.  The following day, the police executed a third search of

---

[2]Lewis has also challenged the sufficiency of the affidavit supporting the March 30, 2002 search warrant and also argues that defense counsel should have argued that evidence recovered from the March 30 and 31, 2002 searches be excluded based upon the "fruit of the poisonous tree" doctrine.  Both arguments will be addressed below.

the home, uncovering crack cocaine and marijuana, a .22 handgun and holster, and a fire safe containing U.S. currency. *Id*. at 83, 86-88, 92-95. The safe also contained $100 in marked currency from the controlled purchase. *Id*. at 94-95.

The evidence obtained from and the testimony regarding the March 30 and 31, 2002 searches provided substantial, if not overwhelming evidence, apart from the evidence recovered on March 13, 2002, to support Lewis' conviction for possession with intent to distribute cocaine base. *See United States v. Harris*, 293 F.3d 970, 974 (6th Cir. 2002) (listing the essential elements of possession with intent to distribute a controlled substance). In the face of such evidence, Lewis is unable to show that, but for defense counsel's failure to challenge the March 13, 2002 search warrant, the reliability of the conviction was undermined and the result would have been different. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) (denying ineffective assistance of counsel claim because record contained "overwhelming evidence establishing [movant's] guilt" that precluded a showing of prejudice under *Strickland*). Accordingly, Lewis' claim of ineffective assistance of counsel based upon the failure to file a motion to suppress evidence obtained pursuant to the March 13, 2002 search warrant is denied.

Lewis also briefly contends that defense counsel's performance was deficient because he failed to challenge the second search warrant issued March 30, 2002. This claim is completely without merit because the second search warrant was clearly supported by probable cause. The March 30, 2002 search warrant was supported by an affidavit by Deputy

Nichols.  Deputy Nichols' affidavit detailed a controlled narcotics purchase by a confidential

informant conducted that same day.  The affidavit stated:

> Affiant was present during an interview with informant, CI 02-02, when
> informant told affiant that on 03/30/02 Saturday at 2008, informant bought
> $100.00 worth of cocaine at the above location.  CI 02-02 had already bought
> cocaine this date on complaint 143-1073-02 at another location and upon
> execution of a search warrant the money used to buy the cocaine was
> recovered along with an amount of marijuana.
>
> Affiant knows that CI 02-02 was watched by Sheriff Hilts going to and coming
> from the location above.
>
> Affiant had given CI 02-02 the money for this buy just moments before.  And
> CI 02-02 had returned with cocaine in a baggie.  This cocaine was tested and
> proved to field test as cocaine.
>
> Affiant is aware that Leroy Lewis is out on bond for drugs and firearm charges
> at this time in this county.

March 30, 2002 Search Warrant, Attachment 2, 1:02-CR-71 (Docket #51).  When evaluating

an affidavit containing hearsay information from a confidential informant, "a court must

consider the veracity, reliability, and the basis of knowledge for that information as part of

the totality of the circumstances for evaluating the impact of that information . . . ."  *United*

*States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).  While the affidavit does not contain

facts such as the length of relationship between the sheriff's deputy and the informant, the

reliability of information provided by the informant in the past, or that the informants' true

identity was disclosed to the issuing magistrate, it is not devoid of facts supporting the

confidential informant's veracity, reliability, and basis of knowledge.  The affidavit discloses

that, earlier that day, the confidential informant purchased cocaine in another, unrelated case

and that "upon the execution of a search warrant the money used to buy the cocaine was recovered along with an amount of marijuana." This is at least, some indicia of the informants' reliability and basis of knowledge. Moreover, the affidavit also contains substantial independent police corroboration in the form of the controlled narcotics purchase supervised by the sheriff's department. *See Gates*, 462 U.S. at 244-45 ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'") (quoting *Jones v. United States*, 362 U.S. 257, 269 (1960)); *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) ("[A]n affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of circumstances, if it includes sufficient corroborating information.") The affidavit details Nichols' own knowledge that he gave the confidential informant $100 to purchase cocaine, the informant was watched by police going to and from Lewis' residence, and the informant returned with a substance that "proved to field test as cocaine." Thus, the affidavit provided a substantial basis from which the magistrate judge could conclude that probable cause existed that evidence of contraband would be found in the place to be searched. *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)).[3] Accordingly, defense

---

[3]Lewis argues that the affidavit supporting the search warrant is defective because it relies upon evidence retrieved from the allegedly unconstitutional March 13, 2002 search. Lewis' argument is based upon the second to last sentence in the affidavit stating, "[a]ffiant

11

counsel's decision not to challenge the sufficiency of the March 30, 2002 search warrant did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

Finally, Lewis contends that trial counsel's performance was deficient because he failed to argue that evidence from the March 30 and 31, 2002 searches should have been excluded as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963). "The [exclusionary] rule excludes from admissibility 'not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *United States v. Akridge*, 346 F.3d 618, 623 (6th Cir. 2003) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984) (citation omitted)).

---

is aware that Leroy Lewis is out on bond for drugs and firearm charges at this time in this county." This sentence adds little to the determination of probable cause justifying the issuance of the search warrant. In truth, there is no mention in the affidavit of evidence retrieved from the March 13, 2002 search. The affidavit merely mentions that Lewis was out on bond for drug and firearm charges. Even if that sentence were removed, the affidavit would still contain sufficient information to establish probable cause for the warrant to issue. *See e.g.*, *Jenkins*, 396 F.3d at 760 ("[I]t is well settled that: when a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, if the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted.") (quoting *United States v. Smith*, 730 F.2d 1052, 1056 (6th Cir. 1984) (citations and quotations omitted); *see also United States v. Murphy*, 241 F.3d 447, 458 (6th Cir. 2001) (holding that probable cause to search defendant's hotel room existed where policed observed controlled purchase of crack cocaine made by confidential informant outside hotel room, observed defendant return to hotel room after the transaction, and overheard telephone conversation between informant and defendant arranging the purchase).

Lewis' argument is misguided and does not entitle him to any relief.  Even assuming that the March 13, 2002 search was illegal, the exclusionary rule would not apply to evidence from the March 30 and 31, 2002 searches because the evidence was found through sources wholly independent of the alleged constitutional violation and consequently, was not fruit of the poisonous tree.  *See e.g.*, *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996) (discussing the independent source rule) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)). In determining whether the independent source rule applies, "courts 'should keep in mind the underlying question: whether, granting establishment of the primary illegality, [the evidence has] been come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Jenkins*, 396 F.3d at 757 (quoting *Leake*, 95 F.3d at 412) (quotation marks omitted).  Put another way, evidence derived from an illegal search or seizure must be suppressed, "unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation." *United States v. Smith*, 386 F.3d 753, 763 (6th Cir. 2004) (quoting *United States v. Miller*, 146 F.3d 274, 280 (5th Cir. 1998)).

Both searches were conducted pursuant to valid search warrants.  Further, the facts establishing probable cause for both subsequent search warrants were sufficiently distinguishable from and unrelated to the March 13, 2002 search.  Probable cause for issuance of the March 30, 2002 search warrant was based upon a controlled narcotics purchase supervised by the Lake County Sheriff's deputies.  *See* March 30, 2002 Search

13

Warrant, Attachment 2, 1:02-CR-71 (Docket #51); Transcript of Nichols Testimony at 8-12.

The March 31, 2002 search warrant was obtained after the police failed to find the marked

money used during the controlled purchase.  Probable cause for the March 31, 2002 search

warrant was based upon the controlled purchase and statements made by Theresa Pickard,

Lewis' girlfriend, regarding the drug proceeds and a fire safe where Lewis stored his money.

*See* March 31, 2002 Search Warrant, Attachment 3, 1:02-CR-71 (Docket #51).  The only

arguable reference to the March 13, 2002 search in both subsequent search warrants is the

statement explaining that Lewis was out on bond while facing drug and firearm charges.

Even assuming that this reference is tainted information,  the application of the exclusionary

rule is not triggered because both subsequent search warrants were obtained lawfully and

contained sufficient untainted information derived from independent sources to establish

probable cause.  *See Jenkins*, 396 F.3d at 758-60 (discussing "an interpretation of the

independent source rule that incorporates consideration of the sufficiency of the untainted

affidavit to see if probable cause exists without the tainted information.").  The facts

underlying the March 30 and 31 search warrants and the evidence seized pursuant to those

warrants were derived from independent sources that were sufficiently distinguishable from

the March 13, 2002 search.  Accordingly, defense counsel's decision not to pursue this

fruitless line of argument was not objectively unreasonable and does not support Lewis'

ineffective assistance of counsel claim.

B.   *Failure to Object to Prosecutorial Misconduct*

Lewis also contends that his trial counsel was ineffective because he did not object to numerous allegedly improper questions and tactics employed by the Government during trial.  The laundry list of improprieties that trial counsel allegedly failed to object to veers perilously close to, and often directly implicates, the type of impermissible second guessing expressly prohibited under *Strickland.  See*, *e.g.*, *Williams v. Coyle*, 260 F.3d 684, 703 (6th Cir. 2001) ("Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court . . . to conclude that a particular act or omission of counsel was unreasonable.") (quoting *Strickland*, 466 U.S. at 689); *United States v. Hall*, 212 F.3d 1016, 1021 (7th Cir. 2000) (In evaluating an ineffective assistance of counsel claim, "we resist a natural temptation to become a 'Monday morning quarterback.'") (quoting *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)).   Nevertheless, a review of the record demonstrates that trial counsel did not render ineffective assistance and the alleged improprieties cited by Lewis are based upon erroneous interpretations of law, exaggerations of the record, and complete distortions of the proceeding.

Lewis first argues that trial counsel failed to object to the Government's repeated reference to the fact that Lewis was a convicted felon.  Lewis contends that these references resulted in his being tried based on his bad character and prior history of being a convicted felon.  This argument completely overlooks the fact that, among other counts, Lewis was

15

charged with being a felon in possession of a firearm.  *See* Counts 1 and 2, Superseding Indictment, 1:02-CR-71 (Docket #19).  An essential element of this crime is that the defendant was a felon at the time he possessed the firearm.  *See, e.g., United States v. Smith*, 320 F.3d 647 (6th Cir. 2003).  Therefore, Lewis' status as a felon was highly relevant to the Government's case.  Lewis has not provided any authority for the proposition that it is improper for the prosecutor to refer to a defendant as a felon during a prosecution for being a felon in possession of a firearm.  In fact, there is authority for the opposite position.  *See United States v. Bowman*, 353 F.3d 546, 551 (7th Cir. 2003) (holding, in a felon in possession of a firearm prosecution, that prosecutor's references during opening and closing argument that defendant was a convicted felon, that he carried an unregistered, loaded gun, that he carried marijuana, and that he had various traffic violations were not improper because each was based upon stipulated facts or facts testified to during trial); *United States v. Reis*, 788 F.2d 54, 58 (1st Cir. 1986) (finding no impropriety where prosecutor referred to defendant as a convicted felon "several times during the closing argument" because each instance described a necessary element of the charged offenses or explained a stipulation entered into between the parties).  Moreover, a review of the portions of the record cited by Lewis makes clear that the Government's limited references to Lewis' status as a felon were not improper and did not result in Lewis being tried based upon his bad character.  For example, Lewis points to portions of the Government's opening and closing statements in which Lewis is referred to as a convicted felon.  These references were made in the context

16

of explaining the charges against Lewis and the elements of each crime, summarizing the evidence that the jury would hear during trial, and explaining the stipulation entered into between the parties regarding Lewis' felon status. *See* Transcript of Jury Trial at 2, 4, 5, 198. Further, Lewis points to the portion of the record in which the stipulation is read into evidence during trial. *Id*. at 91.  These references were not improper and any objection by trial counsel would have been fruitless.  Consequently, the decision not to object does not support Lewis' ineffective assistance of counsel claim.

Lewis next contends that trial counsel failed to object to certain "inadmissible hearsay" and improper questioning relating to the reason police began investigating Lewis and obtained a search warrant for his home.  During the Government's opening statement, the prosecutor told the jury that it would hear testimony regarding information that the police received about drug trafficking at Lewis' residence that lead them to seek a search warrant. *Id*. at 4, 6.  Indeed, Deputy Nichols testified, without objection, that he received information from multiple informants that culminated in the police seeking a search warrant. Transcript of Nichols Testimony at 4-6.  Lewis' allegation completely ignores the well established principle that such background information is not hearsay because it is not offered for the truth of the matter asserted, but is offered to show why the police took certain actions. *See, e.g.*, *United States v. Aguwa*, 123 F.3d 418, 421 (6th Cir. 1997) (concluding that statements providing background information explaining how and why law enforcement came to be involved with a particular defendant are not hearsay); *United States v. Martin*, 897 F.2d 1368

(6th Cir. 1990) (same).  The Government cited this line of authority in its trial brief provided to defense counsel prior to trial.  Thus, counsel's failure to object to the testimony on hearsay grounds would have failed and was not objectively unreasonable.[4]

Lewis also contends that trial counsel was ineffective because he failed to object to a line of questioning during the examination of Deputy Nichols in which the officer gave both fact and expert testimony.  To the extent that Lewis argues that it was impermissible for Nichols to offer an expert opinion on drug dealing, such an argument has been specifically rejected by the Sixth Circuit.  *See United States v. Harris*, 192 F.3d 580, 588 (6th Cir. 1999).  Moreover, the Sixth Circuit has also held that it is not impermissible for the Government to elicit expert testimony from a law enforcement officer who also testified as a fact witness.  *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996).  While the potential for jury confusion exists and caution must be exercised in using the same officer as a fact and expert witness, *Thomas*, 74 F.3d at 682-83, the manner in which the prosecutor conducted the

---

[4]Further, Lewis' attempt to characterize this background testimony as violative of the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004) is unavailing.  The primary object of the Confrontation Clause is testimonial hearsay.  *See United States v. Jamieson*, 427 F.3d 394, 411 (6th Cir. 2005).  Testimony is "[a] solemn declaration or affirmation *made for the purpose of establishing or proving some fact*."  *Jamieson*, 427 F.3d at 411 (emphasis added) (quoting *Crawford*, 541 U.S. at 51).  Thus, as here, testimony offered for a purpose other than for the truth of the matter asserted does not implicate the Confrontation Clause.  *See Crawford*  541 U.S. at 59 n. 9 (noting that the Confrontation Clause did not "bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.") (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

examination in this case was appropriate and was not confusing.  Therefore, trial counsel's decision not to object to this line of questioning was not ineffective assistance of counsel.[5]

Lewis also contends that defense counsel failed to object to the introduction of improper 404(b) evidence  and leading questions by the prosecutor regarding an incident in 2000 between Nichols and Lewis.  This argument is a complete distortion of the record and blatantly untrue.  The portion of the record cited by Lewis involves cross-examination by *defense counsel*, not the prosecutor.  Transcript of Nichols Testimony at 16.  Clearly, cross-examination by defense counsel cannot be attributed to the Government as prosecutorial misconduct.  Moreover, the use of leading questions was permissible on cross-examination.  *See* FED. R. EVID. 611.  The Court also notes that this evidence was relevant to the defense theory that Lewis was specifically targeted and set up by law enforcement because of hard feelings after Lewis avoided prosecution for the 2000 incident.  Transcript of Jury Trial, Vol. II at 208.  This allegation does not support Lewis' ineffective assistance of counsel claim.

---

[5]Lewis also contends that defense counsel should have objected to a line of questioning relating to the process by which the police obtain a search warrant.  Supp. Br. at 11, 13-14.  Lewis argues that such testimony suggests that "the judge has already made a finding of guilt and that the Defendant should, therefore, be considered guilty thus making a necessity of all the trouble for the jury trial basically unnecessary."  *Id*. at 13.  This argument is a complete exaggeration of the testimony presented at trial.  In fact, Nichols' testimony accurately explained the process the police go through to gather evidence supporting a search warrant and the fact that a judge reviews the information prior to issuing the search warrant.  Such testimony assists the jury in understanding police procedures that are generally not within the experience of the average juror.  *Thomas*, 64 F.3d at 682.  Moreover, in light of the defense theory that Lewis was set up by a vindictive police force, testimony tending to show that the law enforcement officials knew the proper procedure for obtaining a warrant and followed it was highly relevant.

Lewis' remaining allegations do not merit discussion and do not demonstrate that trial counsel's performance was objectively unreasonable or that he was prejudiced. Putting aside the fact that Lewis' remaining allegations are either misrepresentations of the record, lacking in legal support, or directly contrary to existing law, Lewis' claims simply invite the Court to second guess numerous decisions made by defense counsel in the course of the trial. *Strickland* expressly warns against such hindsight and second guessing. 466 U.S. at 689, *see also Williams*, 260 F.3d at 703. Accordingly, Lewis' allegations regarding defense counsel's failure to object to "prosecutorial misconduct" are without merit.

C.  *Rule 29 Motion for Judgment of Acquittal on Count 3*

Finally, Lewis also contends that trial counsel's performance was deficient because he failed to seek a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on Count 3 charging Lewis with knowing possession of a stolen firearm. Because such a motion would have been frivolous, defense counsel was not ineffective for failing to file a Rule 29 motion. *See United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) (holding that counsel's failure to make a motion for a judgment of acquittal "that had no chance of success" fails both prongs of *Strickland*).

When considering a Rule 29 motion, the Court must "consider all of the evidence in a light most favorable to the government. The government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." *Carter*, 355 F.3d at 925 (citation omitted); *United States v. Chambers*, 195

20

F.3d 274, 276 (6th Cir. 1999) ("The inquiry [on a Rule 29 motion] is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).   In this case, the prosecution presented evidence that a firearm was recovered from the ceiling of Lewis' home during the March 31, 2002 search.  Transcript of Trial Vol. I at 88.  This firearm was received into evidence as Exhibit 24.  *Id.*  The jury also heard testimony that this firearm was reported stolen from 8961 23rd Avenue, Bitely, Michigan.  Transcript of Trial Vol. II at 166-68.  The jury also heard the testimony of Marvin Carter, the man who admitted to stealing the firearm.  Transcript of Jury Trial Vol. I at 128.  Carter explained that he gave Lewis the firearm in order to pay off an outstanding debt for the purchase of crack cocaine.  *Id.* at 129-30.  Carter also testified that when he gave Lewis the firearm, Lewis asked if the gun was "hot" and he replied that "it wasn't cold."  *Id.* at 131.  Carter then explained to the jury that he understood Lewis' question to mean "was it stolen" and that his response meant that the weapon was, indeed, stolen.  *Id.*  Although Carter did not identify Exhibit 24 as the gun he stole and gave to Lewis, he did testify that he stole the gun from 8961 23rd Avenue, Bitely, Michigan.  *Id.* at 131, 136.  This evidence, construed in the light most favorable to the prosecution, was more than sufficient to satisfy the Rule 29 standard.  Accordingly, defense counsel's failure to raise this frivolous motion does not constitute ineffective assistance of counsel.  *Carter*, 355 F.3d at 924.

Lewis has failed to demonstrate either prong of the *Strickland* analysis for ineffective assistance of counsel claims.  Accordingly, his § 2255 motion is denied.  An order will be entered consistent with this opinion.


Date:    January 9, 2006           /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE